INGHAM and others *v.* PIERCE and others.

*(Circuit Court, W. D. Michigan, S. D.  1887.)*

PATENTS FOR INVENTIONS—NOVELTY—CLAIM—BASKET HANDLES.

 In a suit for an infringement by a patentee claiming under letters patent No. 121,054, for an "improvement in platforms or handles for fruit-baskets," it appeared that the advantages *claimed* were that the patented top was removable, allowing baskets to be nested, and assisted in better securing a network over the fruit; but these features were not novel.  It also appeared that the patented article possessed a novel feature in a wire bent over at the top, and brought down *through a hole* in the standard, to secure the standards of the cover to the basket, which held the cover more rigidly in its place than other baskets in which such wire is brought down *on the side,* outside or inside, of the standard.  *Held,* that the patent, being otherwise wanting in novelty, could not be supported for this feature, which was dormant in it and unclaimed.

In Equity.   Suit for infringement of patent.

*Ross Shinn* and *Dyrenforth & Dyrenforth,* for complainants.

*Taggart & Denison,* for defendants.

SEVERENS, J.   The bill in this cause was filed for the purpose of restraining an alleged infringement of the rights secured by letters patent to Joseph Knapp, September 21, 1871, for an "improvement in platforms or handles for fruit-baskets," No. 121,054.   The complainants are the assignees of Knapp, the patentee.   Several defenses are set up: (1) Want of novelty; (2) that defendants have not infringed; (3) abandonment by the patentee.   The case has been heard on pleadings and proofs.

The conclusions arrived at by the court from a consideration of the pleadings, proofs, and exhibits, and the argument are as follows:

*First.* The specifications and claims on which the Knapp patent issued, indicate that the nature of the invention consisted in a removable platform or support, so arranged that it may be conveniently fastened to an ordinary fruit-basket, and in part hold the netting in place over the fruit, while at the same time it serves as a support to another basket on top for transportation, etc.   The advantage claimed by the inventor for his improvement was that it supplied an independent top, which could be made anywhere, and could be attached for use at the same time the netting was put on, and afterwards detached.   Thus the baskets could be nested, and conveniently sent from the factory to the place of using, and, after the contents were marketed, the baskets could be returned nested, which could not be done in the ordinary way of constructing the basket with the cover attached.   The alleged invention was in the construction of the cover of thin strips of stuff extending horizontally across the top

of the basket, but elevated from it by short standards, which rested upon the rim of the basket. A wire bent over at the top descended through a hole in the standard, and, continuing through the basket rim, was turned under and around it, to secure the standards of the cover to the basket. The thin strips above mentioned were tacked on to the top of the erect standards at each end of the strips, thus preventing the wire which goes through the standard from getting loose. The inventor disclaimed the elevated platform, as such; it having been in previous use. His claim was for a removable platform or handle consisting of the above arrangement, which would also allow the cover to be so attached as to in part hold the netting, covering the fruit, in place. From this claim, as illustrated by the specifications, it is apparent that the peculiar feature and resultant benefit designed by the inventor was, as stated, in the "advantage" of his improvement which I have above set forth from his specifications; that is to say, the providing a removable cover, thus allowing the nesting of the baskets for transportation, and allowing also an added facility in securing the netting over the fruit.

*Second.* It is clear from the evidence and the exhibits that the elevated platform top was in use some time before this alleged invention, and was to a very considerable extent so constructed as to be removable. Indeed, the only difference between the patented structure and one of these in quite extensive previous use consisted in this: that whereas, in the former, the wire was put *through* the standard, as above shown, and then was turned about the basket rim, to secure it in place, in the latter the wire, after being hooked into the top of the standard, was brought down on the *side*, outside or inside, of the standard, and then turned about the basket rim. Some of the previous patterns had been patented; others not. There was therefore no novelty in any feature which the inventor had in contemplation in making claim for his patent, or which, by the most liberal construction of his specifications and claim, can be suspected to have occurred to him.

*Third.* It turns out, however, that the putting the wire through the standard, instead of down the side of it, has a tendency to hold the cover more rigidly to its place when attached than the other method, and in that respect has more of utility; but this feature was not claimed, or, so far as appears, thought of. It sometimes happens that an invention contains features of utility which may be adapted to other uses than those specifically contemplated by the inventor, but those uses are kindred uses, or are an extension of the features into use in the development of art. In these cases the feature of utility exists in the patent, and is expressed by the claims, but the use is broadened. That principle would not support a patent claimed and granted for a feature which was not novel, as protecting it for another feature which was dormant in it, and afterwards proving to be useful.

*Fourth.* There are other serious obstacles to the complainants, but, upon the view taken of the first ground, it is not necessary to discuss them.

The bill must be dismissed, with costs.